Without further ado, I want to say that most, all but one of our cases are submitted on the briefs today. We have one case for argument, so I'll just mention them for the record. First, Antonio Cruz Cardenas v. Merrick Garland, No. 23-12580, is submitted on briefs. Then Erika's second, Erika Elizabeth Avell de Lopez v. Merrick Garland, is submitted on the briefs. No. 23-4312, Donovan Pedraza Madrigal v. Garland, is submitted on the briefs. And then Caravantes v. Garland, which is No. 23-4327, is submitted on the briefs. And the Lawyers for Fair Reciprocal Admission v. United States, No. 24-2213, is submitted on the briefs. And that brings us to our case on the argument 24-701. And this case is set for 15 minutes per side. And because we only have one case being argued, if counsel go over their full, go over their argument time initially, I'll try to add a minute or two for rebuttal. But the best practice, if you can do it as an advocate, as an advocate is to reserve some of your argument time for rebuttal and before it's all gone. Okay, so we should proceed with the appellant's argument now. Morning, Your Honors. My name is Alisa Arnell for the appellants. May it please the Court, I would like to reserve five minutes for rebuttal. Yeah, so watch the clock yourself because it's your responsibility. But if you forget, I'll try to remind you. Absolutely. Thank you, Your Honor. Your Honors, the central question in this appeal is, when did the filter malfunction and cause Mr. Bennett injury? The District Court never answered this question. And it erred by granting Bard summary judgment without doing so, in three primary ways that I would like to discuss today. First, Bard bore the burden to prove the timing of injury caused by malfunction of the filter. When I say malfunction, I'm referring to migration, tilt, perforation or fracture as alleged in the complaint. Bard did not meet its burden and the District Court erred by ignoring it. When you say Bard has to meet its burden, are you saying that Bard has to confess that their product was defective? No, Your Honor. That is not necessary, or at least it's not necessarily necessary for that to be the case. What Bard has to do is demonstrate by meeting its affirmative burden, which is the equivalent of a directed verdict burden, to say that under the evidence, there is no other injury. Any injury that was caused by the defect, the malfunction alleged in the complaint, had to have happened prior to the statute of limitations time. So I'll confess, counsel, that in some aspects of the statute of limitations, I find California law confusing. Perhaps that's just me. But the way I read the cases is that once the party has suffered actual and appreciable harm, and I'm going to put aside the question of sorting different harms, but actual and appreciable harm, the statute begins running. Is that correct? That is correct, Your Honor. And the question is, what kind of harm? And the answer to that question is harm that's caused by the defect that's alleged in the complaint, not the harm... Let's see. Are you familiar? I know you must be familiar with it because you cited it in your opening brief. The Supreme Court of California's Pushes case, or Pushes versus Philip Morris. Yes, Your Honor. Okay. You're not contending that this case comes within the Pushes latent defect rule, are you? I don't know. In some ways, yes. It's not exactly the same thing in that case, obviously. It's smoking, right? And smoking can cause harm eventually. It's not an act that's happened at one time. And what we're not here saying is that based on an act that happened one time a long time ago, that that act later caused an injury that isn't known. We have here is a situation where a medical device is in place and it's functioning as intended until one day it does not and it malfunctions. And what I would analogize this to is a hypothetical. Let's take an example of my office chair. Let's say that my office chair is uncomfortable. It hurts my back. I've been sitting on it for five years. I say, this office chair is uncomfortable. It hurts my back. I go to the doctor. The doctor says, yeah, you have some back pain. Maybe you should get a new chair. Maybe you take some medication for it to alleviate the pain. Now, let's say that this chair also has a defect in it that sometimes this type of chair can collapse without warning and injure the person who's sitting in it. And one day I'm sitting in this chair and it does and it injures my back and now I need surgery and I have all these other problems that are caused by the collapse of this chair. Excuse me. So my cause of action against the designer or manufacturer of my chair accrues when the defect in the chair that caused it to collapse caused me injury. It doesn't accrue when I bought the chair. It doesn't accrue when sitting in the chair as it's meant to be sat in bothers my back and it's uncomfortable. Your contention is that what to me is the clear evidence that your client was on notice that his varicose veins problem was related to possible problems with the filter. Your position is that's irrelevant because to you, the varicose veins problem is so different in kind and nature from the alleged fracture problems that it's apples and oranges for the purpose of the statute of limitations. Your Honor, it's our position that the varicose veins, if we assume that they were related to the filter and caused by the filter and I will agree with you that the record indicates that my client believed that that was the case. They're actually, if you look at those same records, it's unclear whether a doctor ever told him that that was true. They told him, didn't they schedule a removal because of the varicose veins? You scheduled the removal. There are a lot of different symptoms that my client was experiencing leading up to this period. And so I would not say that the medical records are very specific or clear as to whether or which of these his doctors actually believed were being caused by or related to the filter. The fact of the matter is that the filter was no longer necessary for its original purpose. And at that point, it makes sense to remove it if there's a possibility that it will alleviate some of those symptoms. That doesn't mean that the filter has malfunctioned in a way that the complaint alleges and that in a way that he has suffered actionable injury. In the same way that it makes sense for me to replace my office chair if it's hurting my back. But that doesn't mean I have a cause of action against the manufacturer or against the designer for a defect in it. If the defect is that the chair collapses, I only have a cause of action when the chair collapses and causes me injury. And that's the situation here where the defect that is alleged in the complaint is the defect of the risk of tilt, perforation, or fracture. And Mr. Bennett had to be injured by that defect in order to have a cause of action. Otherwise, his cause of action simply did not accrue, even though he knew about it, even though there were other negative symptoms that he attributed to the filter, and even if the filter was causing some of those other symptoms. Counsel, I don't mean to interrupt. No, please go ahead, Judge. But if counsel has completed an answer to Judge Bennett's question, I have a couple of questions. And Judge Ezra might also have questions. So let me just put mine on the table because they're short and simple. First, the dismissal based on a statute of limitations is an affirmative defense, correct? Statute of limitations is an affirmative defense. And then second, under our law, doesn't BARD have the burden of proof to prove it's an affirmative defense? Yes, Your Honor, absolutely. That is BARD's burden to prove. So BARD would have to be dismissed here on a summary judgment, or dismissed either by summary judgment with facts or a dismissal based on the pleadings. BARD would have to show that the injury here was not distinct, not separate and distinct from the varicose veins. Your Honor, I'm not sure that separate and distinct is the right analysis here. It's BARD's burden to prove when Mr. Bennett suffered injury that was caused by the defect that's alleged in the complaint. And our complaint does not even mention varicose veins, and there's no evidence anywhere in the record, or honestly, otherwise, that suggests that varicose veins are caused by migration, tilt, perforation, or fracture. Whether the filter's presence in his body somehow was contributing to varicose veins, again, as I stated, is a little bit unclear from the medical records, our position that that's not really related at all, despite our client, as a layperson, believing that. But that is not the same as what we're dealing with here, which is the defect has to cause the injury that leads to the cause of action accruing. And that is what BARD had the obligation to prove. And in most of the cases where the courts find that there's a statute of limitations problem and then leaps to the discovery rule and does that analysis, it's really clear that injury had to have happened before a certain date. For example, in the Henderson case with the IUD. The IUD had been removed for three years before she filed the complaint. If the IUD had caused her injury, it had to have happened more than three years ago before the complaint was filed, and it had to have been before the statute of limitations. Okay, thank you, counsel. You've answered my question. Thank you, your honor. Do you have any questions before I reserve my time? It's more of an observation. It appears to me that opposing counsel is relying pretty heavily on the fact that your client apparently had, I don't know whether it was a podcast or some sort of article that he had come across, in any event, relating to the device which had been implanted in him and pointing out fairly specifically that there were issues with respect to that. And then subsequently, he had doctor's visits. Now, it appears that their position is, and I could be wrong, and I'm sure I'll hear from Mr. North when he speaks, but am I correct that they are taking the position that your client had an affirmative duty at that point to inquire further? And it looks like maybe the judge felt that way, the district court, to inquire further. Or is it that your client had to have the specific, precise knowledge at that time that there was this specific defect or the thing had twisted in his body? What is your view? Your honor, I'll defer to Mr. North as to exactly what his position is on that topic. I think you may be right. Your honor, your understanding of his position, because you've come back on this in a way that would indicate to me that your position is that your client did not have the need to know precisely what the defect was for the statute of limitations. He needed to know for the statute of limitations to run and that he didn't have this affirmative duty to go forward and take further steps to make an inquiry. Your honor, I understand Mr. North to be making the argument that my client had some sort of duty from the time that he was aware of this potential, this defect in the filter. And I think that argument really just misses the boat altogether because whether or not my client had a duty to investigate only comes into play if he's already been injured by the defect. Mr. Bennett was aware that there was a defect in the filter that could cause migration, tilt, perforation or fracture. And we can discuss whether or not his investigation was reasonable. And I think that is a clear jury question if we get to that point. But I don't believe that the court needs to get to that point because the evidence shows that we have in the record that he was not injured by that defect until much later. Sometime around or immediately before July of 2023 when it became evident that there was a fracture. And certainly if there had been a fracture in March of 2021, we would have expected those records to show fracture. What the July 2023 records show is that there was no perforation at any point prior to that procedure. And so the defect had not caused him injury. It's like saying that if I know that my office chair has a defect but it hasn't injured me, that I have a statute of limitations problem if eventually it does injure me. Maybe there are other merits issues with my claim if I knew that it had this defect and I keep using it. But that's not a statute of limitations problem. Counsel, sorry to interject, but I see your time has fully run. And I'll give you some two minutes on rebuttal nonetheless. But I think we should hear from Mr. North. Yes, Your Honor. May it please the court and good morning. My name is Richard North and I am National Counsel for the defendant C.R. Bard and Bard Peripheral Vascular. Hold on just one second. Sure. I see the clock has not been reset. Let's wait until the clerk can get the clock reset so we know how much time we've got. Kelly, are you on? Now it's reset. Okay, go ahead and please proceed. Thank you, Your Honor. As I indicate, I am counsel for the defendant C.R. Bard and Bard Peripheral Vascular in litigation involving their inferior vena cava filter products. Your Honor, despite the plaintiff's characterization of what the his allegations are in this case, we believe the issue is clear. They are engaged in what I would call post hoc reinterpretation of their complaint. Yes, their complaint talks about fracture, migration, penetration, and tilt, but that is not all it talks about. And I would draw the court's attention to paragraph 69 of the complaint where they allege injury and a failure of this device based on the very injuries he sustained and knew he sustained as early as 2015. In paragraph 69, the complaint says the device subsequently failed by causing thrombosis of the filter, stenosis of the vena cava, perforating the vena cava, and not being retrievable. And importantly, it says that because those things were caused by a failure of the device. It further notes in that paragraph that the filter was noted as causing abdominal distension due to stenosis of the vena cava at the location of the filter. Why is that important, Your Honor? Because the evidence shows the plaintiff knew about those very conditions in 2015 and 2020, both more than three years before he filed this lawsuit. For example- Counsel, let me go to where my biggest problem is in adjudicating this case. It's clear under California law to me that if all a plaintiff suffers from some sort of defect is nominal damages, they don't have to sue just because they have nominal damages. They can wait for something else. Would you agree with that? Yes, Your Honor, I would. Okay. So here we have, from what I can see, evidence in the record in 2020 of the varicose veins problem, which at least as plaintiff alleges it, is significantly different in kind and nature from the type of problems that plaintiff alleges is caused by the fracture and shift. Can you point me to California law that says when is something so minimal or so different from the allegation that the statute doesn't run because there's harm, as opposed to they're so similar or from the same alleged defect that the statute does run at the earlier point? My difficulty is identifying in California law real clarity as to where that is. I'm not sure that I can identify or recall any cases that specifically articulate what Your Honor is saying, but I think there are some cases that are instructive on this point. The cases, and many of them for both the California Supreme Court and the Ninth Circuit that we cited, say you don't have to have knowledge of the specific harm that you eventually sustain as long as you have knowledge or suspicion of some harm, and it doesn't make a distinction between nominal and more serious. But it can't be that, I'm sure I'm going to show my lack of scientific knowledge, that a filter like this, somebody is having pain because it's slightly misplaced, but they don't want to sue on that because the pain just isn't enough, and then later the filter, let's say it was negligently placed one centimeter to the right of what it should have been, and then three years later it fractures, causing very serious injuries. It can't be that at the former point the statute begins to run, but where, and I have seen no California case which suggests that, but where, how do you decide and why shouldn't it be a jury question as to whether it's separate and distinct enough? Your Honor, well first of all I believe that the injuries he sustained and that he knew he sustained before, more than two years before he filed suit, were beyond these sort of minor issues that the court is referencing. I will admit that varicose veins is arguably much more minor than a fracture, but in 2020 he was diagnosed with stenosis of the IVC. He was diagnosed repeatedly in 2015 with traumas in the filter. He alleges in paragraph 69 that those were caused by the failure, and those are serious. When did the fracture occur? It was first identified four months after he filed suit. Yeah, I understand, I understand, I understand that, but does the defendant contend that the fracture occurred more than two years before filing suit? There's no way of telling that, Your Honor. We do know it wasn't discovered until after the lawsuit was filed. We don't know when it occurred. Okay, so you do not contend that it should, that the fracture should have been discovered with reasonable diligence more than two years before the suit was filed? No, Your Honor, not at all, but I will say that that doesn't mean he wasn't aware of other serious injuries before the two years, more than two years before he filed suit. His own doctor felt that a third stenosis of the IVC, that's a very serious condition. That's building up of plaque and blood clots in the IVC that could prevent blood flow. He had reports of serotasis, which of course escaped the filter. Excuse me, counsel, that would be the whole purpose, actually, of the device. The device is supposed to trap blood clots and prevent those blood clots from getting into the lung. Am I not correct? Yes, Your Honor. All right, so if it's doing its job and it's trapped these multiple blood clots and it's become clogged, so to speak, then it would be removed, but it wouldn't be defective. It would have done its job. Maybe it saved his life. No. I'm having a hard time with the question of why this isn't a fact issue for a jury. Because he says he didn't know. This thing is supposed to trap blood clots. It traps blood clots. It gets clogged up because it trapped all these blood clots. They try to retrieve it and they can't retrieve it. Why is he unnoticed that this is a defective device? Seems to me like it did what it was supposed to do. Your Honor, I would say several things in response to that. First of all, there were experts in the multi-district litigation proceeding, and the plaintiff's attorney who was involved in that knows full well there were experts that claimed, we don't agree, that our filter was defective because it tended to attract thrombus, and that was an allegation of defect. That's reflected in paragraph 67. Okay, well that's not in the record here. The point being, Your Honor, that it is an alleged defect. The plaintiff's attorney alleges it to be a defect, and the court asked why isn't this a question of fact. Under California law, and we submit Judge Fitzgerald appropriately applied the burden shifting as occurs under California law. It was our burden to prove that the plaintiff had knowledge of some injury and of a suspicion of wrongdoing to trigger a duty to investigate. We submit that as the district court found, we met that duty because the evidence showed that he had some of the very complications he complains of in his complaint in 2015 and 2020. It also, the record, undisputed evidence shows that he had a suspicion of wrongdoing. He saw the advertisement on TV that Judge Bennett referenced. He went out and hired an attorney in 2015. Then under California law, the burden shifts to the plaintiff to say and prove that the discovery rule applies. In other words, that he acted diligently to try to determine what caused his injury and what those injuries were and the basis of his claims. As Judge Fitzgerald found, we don't believe they met their burden of showing a reasonable investigation. For example, between the time there was the failed retrieval attempt in 2015, he waited four years before, according to the medical records, before seeing anybody to do anything. In 2020, he found out he had stenosis. He found out he had distension of the abdomen. The very things he alleges were caused by a failure of the filter in paragraph 69, yet he didn't file a lawsuit for three whole years. We submit that the record clearly shows that they didn't meet their burden as a matter of law. You're familiar, like your friend, with the Pusha's case? Yes, Your Honor. All right. I think your friend has essentially conceded, she may disagree, that this is not a latent defect case. If that's so, Pusha's is not directly applicable under exactly what the California Supreme Court said. Here's a line from Pusha's. We have never stated what commences the running of a statutory period in a case like this one, in which a later discovered physical injury is alleged to be separate from an earlier discovered physical injury. Now, again, this is all limited to the latent defect circumstance. But is it your view that if you have this earlier discovered physical injury, let's say here the varicose veins, that that starts the statute running, even if the fracture later is a separate physical injury under California law, even if it hadn't occurred yet when the statute run, there hadn't been a fracture when the statute run, there hadn't been a fracture at the time in your view the statute would have run, that that claim is still barred even if a jury could decide that it was a separate physical injury? Yes, Your Honor. I believe so. I think it's just a continuum of the injuries. The thrombus, the stenosis in particular, all of those things could have contributed to the fracture whenever it did occur. If he had been more diligent in obtaining imaging, he might have found the fracture much earlier. I submit to you, Your Honor, that what would control on that point are the legion of California cases that say you don't have to know of the exact injury. You just have to know and have a suspicion that you have some injury. And he clearly had that suspicion as early as 2015 and certainly by 2020 when his doctors were telling him, you've got to have a third retrieval attempt because of this stenosis, because of this distension in the abdomen, because of the symptoms he now alleges were caused by a failure of the 2013. Even though he had had, I mean 2023, even though he had had a lawyer hired for eight years before he filed a lawsuit. Counsel, do you believe that there could be any benefit in this case from certifying any particular question to the California Supreme Court? Your Honor, that's a tough question. Under existing California law, I personally would admit that the answer is clear based on the reasonable suspicion type cases and standards I've articulated. But whether the fracture itself constituted a discrete injury, the law is less clear on that. I will concede that. I believe it's part of the continuum of this developing injury and all these complications really cannot be segregated. They all are sort of interdependent and that the statute of limitations was triggered long before. And I think that's consistent with California law. But I see the court's point of if you really believe that this fracture was so discrete that it needs, the question is whether it triggers a new statute of limitations. I agree with you that the law is not particularly clear on that. Well, I appreciate the candor of your answer, Counsel. Thank you, Your Honor. I see my time is running out. I would just know that in conclusion that we believe the judge appropriately applied the burden of proof. He articulated it correctly. We believe that he focused correctly on the allegations in the complaint as the plaintiff having knowledge much earlier. And yet the plaintiff did nothing. And I would end by the California Supreme Court in the Jolly case, which the party cited. This is a quote. So long as a suspicion exists, it is clear that the plaintiff must go find the facts. She cannot wait for the facts to find her. And on that basis, Your Honor, we would respectfully submit or request that the judgment of the district court be affirmed. Thank you, Counsel. Okay, so we can have some rebuttal, but the clock can be set for two minutes rebuttal. But I can't let you go further than that. Absolutely, Your Honor. Thank you. I appreciate that. I will be brief. I would like to focus primarily on my colleagues' discussion of the allegations in the complaint and the injuries that were listed as alleged in the complaint. Because I think that's really important here to distinguish between what was known at the time the complaint was filed and what we know now following discovery in this case. At the time the complaint was filed, we did not know that there was a fracture. All that we knew was that the filter removal had been attempted, it had been grasped, there was no notation of thrombus in the filter in 2021, and it could not be removed. That led to the suspicion that was later disproven that there might have been a perforation of the vena cava at that time. And that was what led to filing the complaint. Following discovery, we now know that that suspicion was proven to be wrong, but a different malfunction of the filter causing injury was discovered during discovery, and that was the fracture. And for that reason, the statute of limitations actually began to run at whatever time the fracture happened and then the time that Mr. Bennett discovered that fracture. The alleged perforation is honestly irrelevant for purposes of the statute of limitations analysis now here on summary judgment. As Judge Ezra stated, filter was working as intended. It was not malfunctioning. It had not malfunctioned. The malfunction had not caused injury. And for that reason, the statute of limitations does not bar Mr. Bennett's claim, and we respectfully request that the judgment of the district court be reversed. Okay, thank you, counsel. Judge Gould, would it be possible for me to ask counsel one question before I submit it? Sure. Of course. Thank you, Judge Gould. Counsel, I'm going to ask you the same question at the end that I asked your friend. Does plaintiff believe there could be any benefit from any type of certification to the California Supreme Court in this case? Your Honor, if the court believes that California law is unclear regarding the statute of limitations burdens and what the defendant has to prove regarding when the injury accrues and what the plaintiff has to prove regarding when an injury is discovered, that is something that is not as clear by the California Supreme Court as it could be. We believe that the California Court of Appeals decisions describe what California courts would hold, but that is something that the California Supreme Court has not directly ruled upon. I also appreciate your candor in response to my question. Thank you. Thank you, Your Honor. Okay, thank you, judgment. So, I'll thank both counsel for their excellent arguments, and this case shall now be submitted. This court for this session stands adjourned. Thank you.
judges: GOULD, BENNETT, Ezra